UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MCKENZIE ADAMS,

        Plaintiff,

                CASE NO.

    VS.

FANTASY'S TC, INC d/b/a         HON.
FANTASY'S, and DÉJÀ VU
SERVICES, LLC.,

        Defendant.

---

## COMPLAINT

Plaintiff, McKenzie Adams, by and through her attorneys, CARLA D. AIKENS, P.L.C., submits the following Complaint against Defendant, Fantasy's Gentlemen's Club.

## JURY DEMAND

NOW COMES PLAINTIFF, McKenzie Adams, and hereby makes her demand for trial by jury.

## JURISDICTION

1. At all times relevant to this complaint, Plaintiff, McKenzie Adams (hereinafter referred to as "Plaintiff" or "Ms. Adams"), was a resident of the State

1

of Michigan and resided outside Grand Traverse County.

2.     Defendant, Fantasy's TC Inc. (hereinafter referred to as "Defendant" or "Fantasy's"), is a for profit corporation operating that conducts regular and systemic business in the Grand Traverse County, State of Michigan.

3.     Defendant, Déjà Vu Services, LLC (hereinafter referred to as "Defendant" or "Deja Vu"), is a limited liability company that conducts regular and systemic business in the Grand Traverse County, State of Michigan.

4.     All relevant actions, giving rise to this complaint, took place in Grand Traverse County, State of Michigan.

5.     Jurisdiction of this Court is invoked pursuant to; 28 U.S.C. § 1343(a)(4), and 28 U.S.C. § 1331.

6.     This is a suit authorized and instituted pursuant to the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981"); and declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202.

7.     Venue of this Court is pursuant to 28 U.S.C. § 1391(b), the judicial district in which a substantial part of the events giving rise to this claim occurred.

8.     Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff's state law claims.

2

## STATEMENT OF FACTS

9. Plaintiff, McKenzie Adams, is an African American woman who began working for Defendants in May 2025, as an independent contractor dancer.

10. Shortly after beginning her employment, Plaintiff was subjected to a pattern of discriminatory treatment based on her race.

11. Despite multiple complaints made by Plaintiff, the disc jockey, AJ, ("DJ") repeatedly skipped Plaintiff's stage rotation in favor of other non-African American dancers interfering with her ability to earn income.

12. In July and August 2025, Plaintiff reported the discriminatory treatment by DJ AJ to the club owner, Tami Alana-Miller.

13. Plaintiff also confronted a dancer known as Cherry, in front of management and in the presence of witness Veronica, after Cherry made comments that Plaintiff was not invited to an "all-white party" because of her race; Plaintiff recorded this incident on video, the discrimination continued afterward, and Plaintiff never felt safe enough to attend that party.

14. In late August 2025, the hostile work environment escalated to include credible threats of violence.

15. Plaintiff was made aware that a group of coworkers, including Brandi (aka Andrea), Stella (aka Starlynn), Holly (aka Kourtney), and Ivy, were conspiring to physically assault and rob Plaintiff.

16.    Plaintiff reported the threats to management but was dismissed and no action was taken, and the hostile work environment continued.

17.    On or about October 4, 2025, Plaintiff made a confidential report, in fear for her safety regarding the ongoing threats, directly to Justin (management). DJ Dylan was present in the room at the time, but Plaintiff's report was made to management.

18.    Shortly thereafter, Plaintiff's confidential report and personal contact information was leaked, including her full legal name and address, to coworker and aggressor Andrea.

19.    Plaintiff began receiving a barrage of belligerent and harassing messages from Andrea, who was actively on criminal probation.

20.    Plaintiff reported to management the continued racial discrimination and harassment, including the use of racially derogatory names, isolation, and verbal and physical threats, but was dismissed.

21.     Specifically, Plaintiff's non-African American coworker Jordan repeatedly used the n-word in the locker room.

22.    Plaintiff's non-African American coworkers Ivy and Nikki mocked Plaintiff by saying "I bet she was just monkeying around," then acted out monkey behavior for more than twenty minutes in the shared workspace.

23.    Around mid-to-late May 2025, things escalated beyond verbal harassment when Plaintiff's non-African American coworker Brandi (aka Andrea) physically

grabbed Ms. Adams by the arm and demanded to know who she was in an attempt to intimidate her for several nights.

24.    On multiple occasions, Plaintiff lost rotation opportunities, lost income, and was denied an escort to her car, which was offered to the dancers for safety purposes.

25.    Plaintiff suffered further retaliation as a result of her reporting discrimination and harassment to management. Prior to Plaintiff's constructive discharge, Defendants also sent investigators to the club to surveil and spy on Plaintiff.

26.    On or about August 23, 2025, a new male employee, Jade, repeatedly entered the women's locker room (more than nine times in one hour) while dancers were undressing. Jade also repeatedly harassed and intimidated Plaintiff, including calling Plaintiff a "dog" (which he later attempted to excuse as "doll"), and physically intimidating Plaintiff by pretending to throw a heavy water bottle at her while she was seated along the wall. Jade also drove Plaintiff's personal vehicle without a license to advertise for the club; Plaintiff was pulled over by police during this trip, causing Plaintiff to lose approximately 2.5 hours of work time and stage rotation/income.

27.    On August 25, 2025, Plaintiff was violently sexually assaulted on the main stage by a customer, Urias Velazquez Galvez. While Plaintiff was on stage, Galvez forcibly shoved money and his fingers into Plaintiff's vagina, penetrating her without consent. This assault occurred in plain view of management, the DJ, and

customers, and was captured by the club's main-stage cameras. Thereafter, Galvez stalked Plaintiff at her home on at least two occasions. Plaintiff suffered physical injury and an infection resulting in medical treatment.

28.    Plaintiff notified management of the sexual assault and her safety fears. Management did not intervene to stop the assault, never followed up with Plaintiff, never contacted law enforcement on her behalf, did not protect her physically, and did not escort her safely to her car.

29.    Plaintiff's safety was jeopardized on several occasions while employed with Defendants forcing her to take leave.

30.    On or about October 6, 2025, Plaintiff reported the threats to owner Tami Alana-Miller, via text, providing a detailed summary of the discrimination and harassment, and was initially told not to "jump to conclusions."

31.    On or about October 7, 2025, in response to Plaintiff's formal written communication, Tami Alana-Miller told Plaintiff that all further communications must go through Tami Alana-Miller's attorney, Zack Youngsma of Brad Shafer Law.

32.    Further, Tami Alana-Miller told witness Jules to get a PPO against Brandi (Andrea) to establish grounds to terminate Brandi (Andrea) to protect Defendants from further liability.

33.     Out of fear for her safety, as Defendants did nothing to ensure Plaintiff's safety at work, Plaintiff was constructively terminated from her position. Months after Plaintiff left the club, there was an attempted break-in at Plaintiff's home related to this stalking and the safety threats arising from this situation. Plaintiff has been forced into a complete emergency relocation for her survival, and the severe emotional toll has required Plaintiff's children to obtain trauma counseling.

## COUNT I

## DISCRIMINATION IN VIOLATION OF 42 U.S.C. § 1981

34.     Plaintiff incorporates by reference all allegations in the preceding paragraphs of this Complaint, as if fully set forth herein.

35.     42 USC § 1981 prohibits employers from intentionally discriminating against individuals, including employees, in the making and enforcement of contracts.

36.     Defendant's discrimination against Plaintiff as described above is in violation of the rights of Plaintiff afforded her by the U.S. Constitution and the Civil Rights Act of 1866, 42 USC § 1981, as amended by the Civil Rights Act of 1991.

37.     By the conduct described above, Defendant intentionally deprived Plaintiff of the same rights as are enjoyed by individuals who are non-African American, to the creation, performance, enjoyment, and all benefits and privileges of their contractual employment relationship with Defendant, in violation of 42 USC § 1981.

38.    The intentional discrimination on the basis of Plaintiff's race by Defendant that Plaintiff experienced included her termination, which broke the contract between the parties.

39.    The actions of Defendant and its agents were willful, intentional, in deliberate disregard of and with reckless indifference to the rights and sensibilities of Plaintiff.

40.    As a direct and proximate result of those actions, the terms, conditions, and privileges of Plaintiff's employment were adversely affected, and Plaintiff was unlawfully terminated.

41.    As a direct and proximate result of Defendant's wrongful acts, Plaintiff sustained injuries and damages including, but not limited to, loss of earnings and earning capacity, loss of career opportunities, loss of fringe and pension benefits, outrage and humiliation, mental anguish, anxiety about their future, physical and emotional distress, loss of professional reputation and loss of the ordinary pleasures of everyday life. Plaintiff's damages further include medical expenses, relocation and security-related costs, and counseling/therapy expenses, including trauma counseling for Plaintiff's children.

42.    Plaintiff requests relief as described in the Prayer for Relief below.

## COUNT II

## RETALIATION IN VIOLATION OF 42 U.S.C. § 1981

43.    Plaintiff hereby incorporates by reference the preceding paragraphs of this Complaint, as if fully set forth herein.

44.    42 USC § 1981 prohibits individuals from intentionally discriminating against and retaliating against persons who engage in protected activity, including reporting and opposing unlawful acts of race discrimination, in the making and enforcement of contracts.

45.    Defendant's discrimination against Plaintiff as described above is in violation of the rights of Plaintiff afforded to her by the First Amendment and the Civil Rights Act of 1866, 42 USC § 1981, as amended by the Civil Rights Act of 1991.

46.    By the conduct described above, Defendant intentionally deprived Plaintiff of the same rights as are enjoyed by individuals who do not report discrimination, and those who are non-African American, to the creation, performance, enjoyment, and all benefits and privileges of their contractual employment relationship with Defendant, in violation of 42 USC § 1981.

47.    Plaintiff engaged in activity protected by 42 USC § 1981 when she complained of and opposed unlawful racial discrimination.

48.    The retaliation by Defendant that Plaintiff experienced included but not limited to enforcing policies more strictly against her, intentionally jeopardizing her safety, increased scrutiny, isolation, and constructive termination.

49.    The actions of Defendant and its agents were willful, intentional, in deliberate disregard of and with reckless indifference to the rights and sensibilities of Plaintiff.

50.    As a direct and proximate result of those actions, the terms, conditions, and privileges of Plaintiff's employment were adversely affected, and Plaintiff was unlawfully terminated.

51.    But for Defendant's unlawful discrimination against Plaintiff for opposing racial discrimination, Plaintiff would not have suffered damages as set forth herein.

52.    As a direct and proximate result of Defendant's wrongful acts, Plaintiff sustained injuries and damages including, but not limited to, loss of earnings and earning capacity, loss of career opportunities, loss of fringe and pension benefits, outrage and humiliation, mental anguish, anxiety about their future, physical and emotional distress, loss of professional reputation and loss of the ordinary pleasures of everyday life. Plaintiff's damages further include medical expenses, relocation and security-related costs, and counseling/therapy expenses, including trauma counseling for Plaintiff's children.

## COUNT III

### HARASSMENT AND DISCRIMINATION ON THE BASIS OF RACE IN VIOLATION OF THE MICHIGAN ELLIOTT- LARSEN CIVIL RIGHTS ACT, MCL 37.1201, et seq. ("ELCRA")

53.    Plaintiff incorporates by reference all allegations in the preceding paragraphs.

54.    At all material times, Plaintiff was an employee, and Defendant was Plaintiff's employer, covered by and within the meaning of the ELCRA.

55.    A respondeat superior relationship existed because agents of Defendant had the ability to undertake or recommend tangible decisions affecting Plaintiff and the authority to direct all of Plaintiff's daily work activity.

56.    Defendant's conduct, as alleged herein, violated the ELCRA which makes it unlawful to harass or discriminate against an employee because of their race or skin color.

57.    Plaintiff is an African American woman, and, as a result, is a member of a protected class, pursuant to the ELCRA.

58.    Plaintiff was subjected to offensive communication and/or conduct on the basis of her membership in this protected class.

59.    The communication and conduct were unwelcomed.

60.    This unwelcomed conduct and communication were intended to or in fact did substantially interfere with Plaintiff's employment or created an intimidating, hostile, or offensive work environment as alleged in the statement of facts.

11

61.    Plaintiff continually notified and complained to Defendant through its agents of the unwelcomed conduct or communication and Defendant failed to remedy the unwelcomed conduct or communication.

62.    As a direct and proximate result of the Defendant's wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits and have suffered mental anguish, emotional distress, humiliation and embarrassment, and loss of professional reputation. Plaintiff's damages further include medical expenses, relocation and security-related costs, and counseling/therapy expenses, including trauma counseling for Plaintiff's children.

63.    Plaintiff requests relief as described in the Prayer for Relief below.

## COUNT IV

### RETALIATION IN VIOLATION OF THE MICHIGAN ELLIOTT-LARSEN CIVIL RIGHTS ACT, MCL 37.1201, et seq. ("ELCRA")

64.    Plaintiff hereby incorporates by reference the preceding paragraphs of this Complaint, as if fully set forth herein.

65.    At all material times, Plaintiff was an employee, and Defendant was her employer covered by, and within the meaning of, the ELCRA.

66.    A respondeat superior relationship existed because agents of Defendant had the ability to undertake or recommend tangible decisions affecting Plaintiff and the authority to direct all of Plaintiff's daily work activity.

67.    Defendant's conduct, as alleged herein, violated the ELCRA which makes it unlawful to retaliate against an employee who has engaged in protected activity.

68.    Plaintiff engaged in protected activity, as more fully laid out in the statement of facts, including but not limited to when Plaintiff attempted to report the behavior she experienced, the issues she noticed, and other instances as alleged in the facts above.

69.    Defendant, through its agents, had knowledge that Plaintiff engaged in protected behavior because she reported the issue directly to multiple agents of Defendant.

70.    After Plaintiff engaged in protected activity, Defendant's agents thereafter took adverse employment actions against Plaintiff, as alleged in the statement of facts.

71.    Defendant and its agents' unlawful actions were intentional, willful, malicious and/or done with reckless disregard of Plaintiff's rights.

72.    Plaintiff notified Defendant and its agents of the unwelcomed conduct and communication; however, Defendant failed to remedy the same.

73.    As a proximate result of Defendant's discriminatory and retaliatory actions, Plaintiff has suffered losses in compensation, earning capacity, humiliation, mental anguish, and emotional distress.

74. As a result of those actions and consequent harms, Plaintiff has suffered such damages in an amount to be proved at trial.

75. Plaintiff requests relief as described in the Prayer for Relief below.

## COUNT V

### HARASSMENT AND DISCRIMINATION ON THE BASIS OF GENDER/SEX IN VIOLATION OF THE MICHIGAN ELLIOTT- LARSEN CIVIL RIGHTS ACT, MCL 37.1201, et seq. ("ELCRA")

76. Plaintiff incorporates by reference all allegations in the preceding paragraphs.

77. At all material times, Plaintiff was an employee, and Defendant was Plaintiff's employer, covered by and within the meaning of the ELCRA.

78. A respondeat superior relationship existed because agents of Defendant had the ability to undertake or recommend tangible decisions affecting Plaintiff and the authority to direct all of Plaintiff's daily work activity.

79. Defendant's conduct, as alleged herein, violated the ELCRA which makes it unlawful to harass or discriminate against an employee because of their gender/sex.

80. Plaintiff is an African American woman, and, as a result, is a member of a protected class, pursuant to the ELCRA.

81. Plaintiff was subjected to offensive communication and/or conduct on the basis of her membership in this protected class.

82. The communication and conduct were unwelcomed.

14

83.    This unwelcomed conduct and communication were intended to or in fact did substantially interfere with Plaintiff's employment or created an intimidating, hostile, or offensive work environment as alleged in the statement of facts.

84.    Plaintiff continually notified and complained to Defendant through its agents of the unwelcomed conduct or communication and Defendant failed to remedy the unwelcomed conduct or communication.

85.    As a direct and proximate result of the Defendant's wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits and have suffered mental anguish, emotional distress, humiliation and embarrassment, and loss of professional reputation. Plaintiff's damages further include medical expenses, relocation and security-related costs, and counseling/therapy expenses, including trauma counseling for Plaintiff's children.

86.    Plaintiff requests relief as described in the Prayer for Relief below.

**COUNT VI**

**HOSTILE WORK ENVIRONMENT**

87.    Plaintiff incorporates by reference all allegations in the preceding paragraphs.

88.    At all material times, Plaintiff was an employee, and Defendant was Plaintiff's employer, covered by and within the meaning of the ELCRA.

89.    A respondeat superior relationship existed because agents of Defendant had the ability to undertake or recommend tangible decisions affecting Plaintiff and the authority to direct all of Plaintiff's daily work activity.

90.    Defendant's conduct, as alleged herein, violated the ELCRA which makes it unlawful to create a work environment that a reasonable person would consider intimidating, hostile, or abusive.

91.    Plaintiff's work environment, as alleged in the statement of facts, was made extremely hostile on the basis of gender/sex/race due to the discrimination and retaliation she suffered.

92.    Moreover, Plaintiff's continual attempts to have the situation remedied coupled with Defendant's ability to ignore Plaintiff's grievances have made the situation untenable.

93.    Additionally, Defendant treated African American female employees, such as Plaintiff, in a hostile, intimidating and offensive way.

94.    The unwelcomed conduct and communication was intended to, or in fact did, substantially interfere with Plaintiff's employment, and created an intimidating, hostile, or offensive work environment, as alleged in the statement of facts.

95.    As a direct and proximate result of the Defendant's wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits and have suffered mental anguish, emotional distress, humiliation and

embarrassment, and loss of professional reputation. Plaintiff's damages further include medical expenses, relocation and security-related costs, and counseling/therapy expenses, including trauma counseling for Plaintiff's children.

96.    As a result of those actions and consequent harms, Plaintiff has suffered such damages in an amount to be proven at trial.

97.    Plaintiff requests relief as described in the Prayer for Relief below.

## COUNT VII

## WRONGFUL DISCHARGE IN VIOLATION OF MICHIGAN PUBLIC POLICY

98.    Plaintiff incorporates by reference all allegations in the preceding paragraphs.

99.    It is the longstanding public policy of the State of Michigan that there are three exceptions to the employment at-will doctrine, and an employer can be found to be liable for wrongful discharge. They are:

   a. explicit legislative statements prohibiting the discharge, discipline or other adverse treatment of employees who act in accordance with a statutory right or duty;

   b. where the alleged reason for the discharge was the failure or refusal of the employee to violate a law in the course or employment; and

   c. where the reason for the discharge was the employee's exercise of a right conferred by a well-established legislative enactment.

17

100.    Plaintiff's retaliation came as the result of her raising concerns regarding the continuous harassment and discrimination, verbal and physical threats of violence, safety being placed in jeopardy, and isolation.

101.    As a result of Defendant's actions, and consequent harms caused, Plaintiff has suffered such damages in an amount to be proven at trial.

102.    Plaintiff requests relief as described in the Prayer for Relief below.

## **RELIEF REQUESTED**

PLAINTIFF, McKenzie Adams, respectfully requests that this Honorable Court enter judgment against Defendant as follows:

1.    Compensatory and pecuniary damages in whatever amount to which Plaintiff is entitled;

2.    Exemplary and/or punitive damages in whatever amount which Plaintiff is entitled;

3.    An award of lost wages and the value of fringe benefits, past and future;

4.    An award of interest, costs, and reasonable attorney fees; and

5.    An order awarding whatever other equitable relief appears appropriate at the time of final judgment.

Dated:  May 13, 2026              Respectfully Submitted,

<u>/s/*Thameka I. Hall*</u>
Carla D. Aikens (P69530)
Thameka I. Hall (P79693)
CARLA D. AIKENS, P.L.C.
*Attorneys for Plaintiff*
615 Griswold Ste. 709
Detroit, MI 48226
carla@aikenslawfirm.com
thameka@aikenslawfirm.com

19